**FILED**

JEFFREY A. APPERSON, CLERK

APR 3 0 2008

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY**
Case No. _3:08-CV-231-M_

**AMY MISCHLER**

      **Plaintiff**

**v.**

**JO  SEPH LAMBERT,
LEWIS NICHOLLS,
LARRY THOMPSON
KENTUCKY JUDICIAL CONDUCT COMMITTEE, and
KENTUCKY BAR ASSOCIATION.**

      **Defendants,**

_____/

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

The Plaintiff, Amy Mischler on her own behalf for her complaint alleges:

1. This is a civil action under 42 U.S.C § 1983 seeking injunctive and equitable relief against the Defendants for committing acts, or not performing Kentucky Constitutional Mandated duties under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States and Kentucky.

2. The Defendants in this action have purposefully and intentionally failed in their Kentucky Constitutional duties to uphold the laws, regulations, Kentucky Supreme Court rules to deny the Plaintiff the right to redress grievances to give benefits to members of the Kentucky Bar Association.

3. The Defendants in this action have created a superior class of citizens in the Commonwealth of Kentucky who are immune from the laws, regulations, and the Kentucky Supreme Courts Rules.

4.   The Defendants in this action have created an inferior class of citizens in the Commonwealth of Kentucky who are sanctioned by the laws, regulations, and the Kentucky Supreme Court Rules and are denied redress of grievances through the Courts because the Courts do not enforce their own rules.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1331 and 1343.

6.   Venue is proper in this matter under 28 U.S.C. §1391 (b) (2) where the ongoing events denying the Plaintiff her fundamental rights are taking place.

## THE PARTIES

7.   The Plaintiff is a citizen of the United States of American and the Commonwealth of Kentucky.  She has resided in Louisville Kentucky since June 2006 and intends to be domiciled within the Western District of Kentucky for the next forty years.

8.   Defendant Joseph E. Lambert is the Chief Justice of the Kentucky Supreme Court.  He is vested with the duties of assuring that the laws, regulations, and Supreme Court Rules are upheld in the Courts of the Commonwealth of Kentucky.  Defendant Lambert has been noticed on many occasions, over a period of years of violations of the laws, regulations, and Supreme Court Rules of the Commonwealth of Kentucky in Pike County cases 01-CI-1197, 02-D-202-003, and 06-F-00438.  The Plaintiff is asking for injunctive relief against Defendant Lambert in his official capacity.  In accordance to Kentucky Civil Rule 4.04(6), service upon Defendant Lambert in his official capacity is made by "serving the attorney general or any assistant attorney general".  A courtesy copy will be mailed to Defendant Lamberts address at 700 Capitol Avenue Room 231 Frankfort, KY 40601.

9. Defendant Lewis Nicholls, hereinafter Nicholls is a retired senior judge in the Courts of the Commonwealth of Kentucky. He has been assigned to case 01-CI-1197. Defendant Nicholls has been on notice since June 2007 when he was assigned that there were numerous violations of laws, regulations, and Supreme Court Rules in case 01-CI-1197. Defendant Nicholls has actively engaged in the denial of the Plaintiffs right to redress in case 01-CI-1197 and denied the Plaintiff a fundamental right in violation of Kentucky law and the United States Constitution. The Plaintiff is asking for injunctive relief against Defendant Nicholls in his official capacity and a civil form of habeas corpus to make Defendant Nicholls justify violating the Plaintiffs United States Constitutional rights. In accordance to Kentucky Civil Rule 4.04(6), service upon Defendant Nicholls in his official capacity is made by "serving the attorney general or any assistant attorney general". A courtesy copy will be mailed to Defendant Nicholls address at 1205 East Main Street, Greenup, KY 41144.

10. Defendant Larry Thompson, hereinafter Thompson is the Pike County Family Court Judge. Defendant Thompson at all times has had actual notice of violations in Pike County Case 01-CI-1197 and did not report them to the appropriate authorities. Moreover, Defendant Thompson conspired to violate the Plaintiffs civil rights by placing additional EPO's in the court record which were never served upon the Plaintiff. The Plaintiff does not know the outcome of those EPO's. In addition, Defendant Thompson even after recusal continues to sign orders in the case file 01-CI-1197 to humiliate the Plaintiff. Thompson and his staff also have easy access to the court records which have been tampered with. The Plaintiff is asking for injunctive relief against Defendant Thompson in his official capacity. In accordance to Kentucky Civil Rule 4.04(6), service upon Defendant Thompson in his official capacity is made by "serving the

attorney general or any assistant attorney general". A courtesy copy will be mailed to Defendant Thompson's address at 164 Main Street, Suite 400, Pikeville Kentucky 41501.

11. Defendant Judicial Conduct Commission, hereinafter JCC is an organization vested with the duties of disciplining judicial officers for misconduct. The JCC is on notice of some of the judicial violations in 01-CI-1197 but refuses to act; thus creating a class of Kentucky Citizens who are not bound by the laws, regulations, and Supreme Court Rules and an inferior class who are denied redress of grievances because of the special privilege given to Kentucky Bar Association members. The Plaintiff is asking for injunctive relief against Defendant JCC in its official capacity. In accordance to Kentucky Civil Rule 4.04(6), service upon Defendant JCC in its official capacity is made by "serving the attorney general or any assistant attorney general". A courtesy copy will be mailed to Defendant JCC address at P. O. Box 21868 Lexington, Kentucky 40522-1868

12. Defendant Kentucky Bar Association, hereinafter KBA is an organization vested with the duties of disciplining attorneys for misconduct in the Commonwealth of Kentucky. The KBA is on notice of some of the attorney misconduct in 06-F-00438, and 01-CI-1197. The KBA has replied to the Plaintiff that they only investigate some violations of the Supreme Court Rules. The KBA refuses to allow the Plaintiff to redress grievances against its members. The KBA is a private organization. However, it is vested with a public function which makes it a part of the judicial branch. Therefore, in accordance to Kentucky Civil Rule 4.04(6), service upon Defendant KBA in its official capacity is made by "serving the attorney general or any assistant attorney general". A courtesy copy will be mailed to Defendant KBA address at 514 W. Main Street Frankfort KY 40601-1812.

## THE KENTUCKY CULTURAL BACKGROUND

13. There is a caste system in the Kentucky State Courts.

14. Members of the KBA are a privilege caste in the Kentucky Courts. The Kentucky Courts do not enforce the laws, regulations, and the Kentucky Supreme Court rules on members of the KBA when those members are personally involved as parties in the Court system.

15. Individuals who oppose members of the KBA find themselves unable to redress grievances in the Courts of Kentucky because the laws, regulations, and the Supreme Court rules are not enforced by judicial officers, Chief Justice Lambert, the JCC and the KBA.

## FACTUAL BACKGROUND

16. The Plaintiff was married to a member of the KBA member Jonah Stevens, hereinafter Stevens.

17. Stevens refused to pay voluntary child support as orally agreed upon between the Plaintiff and Stevens.

18. The Plaintiff requested child support enforcement from the Pike County Attorney Howard Keith Hall, hereinafter Hall in June 2005. Hall is a member of the KBA.

19. Hall refused to prosecute child support claims against his fellow KBA member Stevens. This continued from June 2005 until April 2006.

20. Defendants Lambert, Nicholls and the KBA were noticed that Hall willfully violated his duties and have never taken any actions against Hall.

21. In April 2006; the Plaintiff had no money to buy her child's medicine due to Halls refusal to prosecute Stevens for child support and make Stevens confirm his income to the Cabinet of Health and Families in order to allow the two children a KCHIP card. The Plaintiff

engaged in First Amendment Speech and marched in public with a sign notifying the citizens of Pike County that Hall was engaging in political favoritism for child support prosecution.

22. Hall and Stevens then conspired to have the Plaintiff served with a fraudulent EPO for marching in public with a sign against them. The fraudulent EPO changed child custody. The Plaintiff had her children taken from her in retaliation by Hall and Stevens. The EPO also served to cover up that Hall had given political favor to Stevens by purposely not prosecuting the child support. See Exhibit 1.

23. Defendant Thompson first presided over the EPO hearing. He was on notice that Stevens had filed an abusive of legal process EPO which was in violation of the Supreme Court Rules. Thompson had a duty to report it, but took no action. See Exhibit 2.

24. Defendant Thompson admitted in the hearing that the EPO was not only lacking in substance but had a procedural defect. Thompson refused to throw the EPO out even though he had a duty to do so. Thompson claimed to recuse.[1]

25. After Defendant Thompson recused, he continued to sign and supervise two additional EPO's which were never served upon the Plaintiff. She only received notice of them nearly five months after the fact when she obtained copies of all her court records. For all the Plaintiff knows; Thompson could have convicted her of domestic violence and placed it on the domestic violence link databases without the Plaintiff knowledge.[2]

---

[1] On page two of exhibit two; the EPO is neither issued nor denied by the trial commission and thus is procedurally void.
[2] See the four pages of Exhibit 4 which have never been served upon the Plaintiff.

26. Judge Julie Paxton was assigned to the case. Judge Paxton engaged in multiple ex parte communications with Hall, and Stevens Counsel Kim Thompson who had been formerly employed by Hall.[3]

27. Judge Paxton allowed Stevens counsel to change and select a new guardian ad litem in the case. Paxton kept the courts records in her custody and they have since been destroyed. Paxton claimed that she changed jurisdiction of the Pike County Attorney to the Floyd County Attorney by telephone without putting any notice in the Court records.[4]

28. Judge Paxton convicted the Plaintiff of Domestic Violence because the Plaintiff marched in public with a sign. Also without putting a judicial finding in the record, Judge Paxton gave full "temporary" custody to Stevens.[5] This denied the Plaintiff child support rights, and covered up the fact that Hall had denied the Plaintiff child support prosecution.[6] Paxton back dated orders in the file. Many of the orders signed by Paxton contain multiple different official dates. One of the orders in the file signed by Paxton was sent from a dead attorney's office fax machine to the Pike County Circuit Clerk.

---

[3] See exhibit 3 which were notes by the GAL entered into the Record. Kim is Counsel Kim Thompson who called the Judge. There are multiple other admissions of ex parte communications between Paxton and Kim Thompson in addition to Hall.

[4] See Exhibit 5 on page two where Paxton states that the "county attorney shall come for hearing on July 13, 2006 at the hour of 10:00 a.m. in the Floyd County Justice Center. The Pike county Attorneys office and the Floyd County Attorneys office shall confer as to which office is prosecuting this matter" and has jurisdiction. There was never an order entered into the record transferring jurisdiction from the Pike County to the Floyd County Attorney. Further, the court video recording in which Paxton states she engaged in an ex parte three way phone conversation with the Pike County Attorney and the Floyd County; the Plaintiff has requested a copy from the Pike County Circuit Clerk a copy of the hearing. The Pike County Circuit Clerk refuses to give a copy of that hearing to the Plaintiff.

[5] On February 21, 2007; Stevens offered to "sell" the Plaintiff unsupervised standard visitation if she would give up fighting for custody. The custodial parent is not allowed by Kentucky law to control whether the non-custodial parent has visitation. However, because Stevens is a member of the KBA he is allowed to control whether the Plaintiff has any visitation. See EPO hearing in front of Judge Thompson in April 2006 and Exhibit 16.

[6] There is no such thing as back child support until child support has actually been set. Hall and Paxton denied the Plaintiff access to the Courts to have child support set before Stevens filed his abuse of legal process EPO which changed custody. Paxton was attempting to make it look as if facially the Plaintiff was giving access to the Courts for child support even though legally Paxton had no right, or intention to make Stevens pay even "back child support:.

29. In fear of the legal system; the Plaintiff wrote a complaint to Attorney General Greg Stumbo about Hall requesting an investigation of his criminal activities. Within days the Plaintiff received a letter from the Attorney General who claimed that he had "no jurisdiction or intention" to investigate Hall.[7]

30. Terrified when she received the letter from Greg Stumbo telling Hall that the attorney generals office was "assist [Hall] in anyway to resolve the issue"; the Plaintiff left eastern Kentucky and attempted to get an EPO to protect her in central Kentucky.[8]

31. Unable to get an EPO because it does not apply to political abuse by a former spouse, even when an individual is in fear for her life; the Plaintiff had weekend visitation and voluntarily returned the children late to Stevens. The children were only returned to Stevens one day late.

32. Hall had received the letter from Greg Stumbo on Friday. Knowing that he had a conflict of interest; the following Monday Hall was typing up a warrant for the Plaintiffs arrest even though he and Stevens knew the children were already being voluntarily returned. Further, the Children were to be returned in Floyd County Kentucky. Hall knew he had no jurisdiction in Floyd County thus falsified the warrant when he typed it stating the alleged crime was committed in Pike County. Hall also obtained the signature of KSP trooper Ryan Hamilton on the document even though Hamilton has admitted in the preliminary hearing that he, Hamilton had no actual knowledge and relied solely on the information provided to him from another individual.[9]

---

[7] Both Howard Keith Hall and Judge Julie Paxton's husband are campaign contributors and good friends of Greg Stumbo. Further, Paxton's husband is former law partner with Stumbo. See Exhibit 6.

[8] See Exhibit 6.

[9] The arrest warrant was signed by trial commissioner Fred Hatfield. Hatfield is a political appointee who does not even have a law degree. Moreover, the Plaintiff had filed a complaint against Hatfield prior due to Hatfield signing an EPO for Stevens in 2002 in which Stevens alleged that the Plaintiff was going to commit domestic violence against Stevens in the future.

33. Judge Paxton, to benefit Hall and Stevens then made an ex parte order without any factual finding to deny the Plaintiff all visitation.[10]

34. At the next custodial hearing at the end of June 2006; Paxton then had her bailiff arrest the Plaintiff and again without any factual finding ordered the Plaintiff to supervised visitation every other weekend without any holiday visitation.[11]

35. The Plaintiff noticed Defendant Lambert of the ex parte communications between Judge Paxton and Steven's counsel and how Paxton was allowing her personal staff serve as custodians of the record in violation of Kentucky law in July/August of 2006.

36. Defendant Lambert forced Paxton to recuse.

37. However, NO OTHER STEPS were taken to rectify the harm that Paxton had caused to the Plaintiff. There was no investigation by the Judicial Conduct Committee, AOC, or the Kentucky Bar Association even through Justice Lambert had a duty under the judicial canons to report Paxton to those organizations.

38. Judge John David Preston was assigned to the case. The Plaintiff had to request the regional judge to order the Pike County Circuit Clerk to send her copies of orders because at this time multiple irregularities began in that office. The Plaintiff had no actual knowledge that Preston was assigned until months after the fact because the Pike County Circuit Court began changing her address within the computer system.

39. Judge John David Preston vacated the DVO conviction against the Plaintiff because the allegations of marching in public with a sign are not domestic violence.

---

[10] See Exhibit 7 which has no factual finding to warrant taking away the Plaintiffs visitation with her children.
[11] See Exhibit 8 dated July 5, 2006. There is no factual finding of serious endangerment to support making the Plaintiffs visitation supervised.

40. Judge Preston was on notice that there was no factual finding against the Plaintiff and even though she requested regular visitation; Judge Preston denied her of such. Thus the harm by Judge Paxton continued against the Plaintiff.[12]

41. Judge Preston moved from family court to the regular Johnson County Circuit Court. Judge Janie Wells was assigned to the case.

42. Judge Wells had actual knowledge of all the abuses of the legal process by attorney Stevens, and former Judge Paxton.

43. Judge Wells had actual knowledge that there was no factual finding in the record to support the continuation of the Plaintiff being force to supervised visitation. Judge Wells continued to violate the Plaintiffs rights be continuing supervised visitation.[13]

44. Judge Wells recused because she had been given knowledge outside of the court that the Cabinet for Health and Families had substantiated abuse against the Plaintiff.

45. Unknown to the Plaintiff, the Cabinet for Health and Families substantiated child abuse against the Plaintiff in October 2006 because of the DVO. They had done so twice and never gave the Plaintiff any notice. The Plaintiff only received notice after an anonymous person believed to be Stevens posted on the internet that the Plaintiff was a child abuser and that the Judge would not give her custody because of it. Upon investigation; the Plaintiff had to requested notice from the Cabinet in March 2007. The Plaintiff then filed for a CAPTA appeal and won. The Cabinet removed the Plaintiff from the Kentucky child abuser database in August 2007.

---

[12] See Exhibit 9. Judge Preston vacated the DVO because "insufficient grounds were stated in the Petition for [even] the issuance of a Domestic Violence Order". Moreover in paragraph 3 of Exhibit 9 Judge Preston kept the Plaintiff under supervised visitation without giving a factual finding of serious endangerment which is required by the Kentucky Appeals Court.

[13] See Exhibit 10. The Plaintiff did not "agree" with supervised visitation. The Plaintiff had no choice in the matter. Judge Wells issued the continuance of supervised visitation with placing a factual finding in the record of serious endangerment required by the Kentucky Court of Appeals.

46. Judge Wells also had notice that there was tampering of the physical record at the Pike County Circuit Clerks office. Judge Wells took no action to stop it. Judge Wells tendered a notice in the record for the Plaintiff to petition Justice Lambert for a change of venue; the Plaintiff requested the civil rule number to allow her to do so. Judge Wells never responded. The Plaintiff knows of no civil rule which allows her to petition Chief Justice Lambert to change venue.

47. Judge Nicholls was assigned in June/July 2007 to 01-CI-1197. Even though there were motions pending which had not been heard for years in the case; Judge Nicholls wouldn't set a hearing until November 2007 delaying the case even more.

48. Judge Nicholls was noticed of the abuses of legal process in 01-CI-1197.

49. The Plaintiff properly requested unsupervised visitation with Thanksgiving and Christmas breaks; Judge Nicholls was noticed that there was NO FACTUAL FINDING in the record and that Kentucky Law required a factual finding to sustain supervised visitation.

50. Violating the law to benefit Stevens, a fellow Kentucky Bar Association member; Judge Nicholls ordered that the Plaintiff only be allowed supervised visitation and did not give a factual finding to support his ruling.[14]

51. Judge Thompson who had no jurisdiction; put a hand written order in the case file 01-CI-1197 ordering the Plaintiff to a "Psycho" exam. Thompson had no jurisdiction to do so.

52. The Plaintiff filed a motion requesting a hearing on Thompson's jurisdiction to place orders in the file.

---

[14] See Exhibit 11. The Plaintiff as stated by Judge Nichols in the order "filed various documents with the Court" noticing Judge Nicholls that there was no findings in the court record to support the past orders of Supervised visitation. In addition, the Plaintiff filed a Brief of supporting law which unambiguously notified Judge Nicholls that the Courts of Kentucky are required to put a factual finding of serious endangerment into the Court record before they can restrict standard visitation by denying it in whole or ordering to be supervised. Judge Nicholls ignored the rule of law.

53. Judge Nicholls refuses to give the Plaintiff a hearing on this matter. Further, Judge Nicholls conducted his own investigation of Thompson's filing outside of the courtroom and ex parte which in violation of the Kentucky civil rules and the judicial canons.

54. Further, the Plaintiff has requested a motion hearing to Judge Nicholls regarding the actions of Stevens's new counsel Brian Cumbo, a member of the Kentucky Bar Association.

55. Cumbo has had his office transcribe hearings and placed those into the record. Those records ARE NOT transcribed by a court reporter. They are transcribed apparently by either Cumbo or his secretary. The Kentucky Civil Rules require that transcriptions be by a Court Report under oath to be admissible into the record. Judge Nicholls is allowing Cumbo to become a witness in the hearing.

56. Judge Nicholls is refusing to give the Plaintiff a hearing on her motion to throw out the Cumbo transcriptions.

57. The Plaintiff wrote a complaint to the Judicial Conduct Committee about Thompson putting an order without jurisdiction in the file, and calling the Plaintiff a "psycho". The Judicial conduct Committee thinks such behavior by a Judge is appropriate even though it violates the judicial canons.

58. The Plaintiff wrote a complaint to the KBA about Hall refusing her child support prosecution for eleven months, having the Plaintiff falsely arrested with the glaring conflict of interest, and allowing Stevens to control the Commonwealth's prosecution of Mischler. The KBA thinks such actions by the Pike County Attorney are appropriate even though it clearly violates the Kentucky Supreme Court Rules. The Conflict of Interests rules no longer apply nor are enforced in the Commonwealth of Kentucky according to the KBA.

## KENTUCKY CASE LAW REGARDING SUPERVISED VISITATION

59.  The Plaintiff noticed Judge Nicholls of the Law and case law regarding supervised visitation in a Brief filed in October 2007. KRS 403.320(1) a parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health. Further, the moving party to suspend or modify visitation must show " a finding that visitation will seriously endanger the child" Lane vs. Lane, No.2006-CA-002436ME 10 (Ky.APP. 2007) citing Smith v. Smith, 869 (S.W.2d 55,56 (Ky.App. 1994)(Emphasis added), citing Hornback v. Hornback, 636 S.W.2d 24 (KY.App.1982)("No 'best interest' standard is to be applied; denied of visitation is permitted only if the child is seriously endangered'). Such finding must be placed in the Court record.

60.  The Plaintiff noticed Judge Nicholls that there was no finding of serious endangerment in the official court record.

61.  Judge Nicholls, on notice that there was no finding, continued to deny the Plaintiff standard visitation nor would give the Plaintiff a factual finding to allow her to appeal.

62.  Judge Nicholls is giving Stevens, fellow KBA member special privileges to help Stevens to keep custody of the children.[15]

## WRONGDOING BY CHIEF JUSTICE LAMBERT

63.  Defendant Lambert has known of irregularities in the Plaintiffs case's 01-CI-1197, 02-D-202-003, and 06-F-00438. Defendant Lambert knows that the laws, regulations and the Kentucky Supreme Court Rules have been violated in said cases by initially by Judge Paxton. Defendant Lambert knows that Judge Preston, Judge Wells, and Judge Nicholls have kept an

---

[15] See Exhibit 16 where Stevens offers to sell "unsupervised visitation" to the Plaintiff in return if she will give Stevens full custody. Stevens is admitting that Judges in Kentucky are under Stevens control and will do what ever Stevens asks because he is a member of the KBA.

illegal, unconstitutional, and humiliating supervised visitation in place for the past nearly two years to punish the Plaintiff because she is not a member of the KBA and had the audacity to expose wrongdoing by KBA members Hall and Stevens.[16]

64. Defendant Lambert knows, or should know that KBA Members Hall and Stevens have abused the legal process by 1) denying the Plaintiff child support prosecution, 2) having a fraudulent EPO served upon the Plaintiff to cover-up their misdeeds, 3) having the Plaintiff convicted of domestic violence for exercising her First Amendment Rights, 4) having the Plaintiff arrested on a warrant in Pike County so Hall could have his office prosecute her to retaliate against her reporting Hall and Stevens crimes to the Attorney Generals office.

65. Having knowledge of the wrongdoing of Paxton, Preston, Wells, Nicholls, Stevens and Hall who all are members of the Kentucky Bar Association: Defendant Lambert protects these members of the KBA even though under the judicial canons he must report them to the appropriate authorities.[17]

66. Defendant Lambert does not enforce the laws, regulations, and Supreme Court Rules of the Commonwealth of Kentucky against members of the Kentucky Bar Association, thereby creating a caste system denying those of the lower caste the ability redress grievances against Kentucky Bar Association members.

67. Defendant Lambert is on notice that the Pike County Circuit Clerk to assist Stevens and Hall; has allowed tampering of the case file. Defendant Lambert has been on notice for over a year that a fraudulent order was placed illegally in the case file by Judge Paxton after she

---

[16] See exhibit 12 and 13.
[17] See Exhibit 14. The Plaintiff hand inspected the file in August 2006. This order was not in the file. The Plaintiff hand inspected the file in May 2007. This order which shows that it was never sent to the parties by the Pike County Circuit Clerk has had the date tampered with. This order is fraud upon the court because it was not placed in the file before Paxton recused and was not even sent to the parties. This is a criminal act to which no one within the Kentucky AOC will investigate. Nor will Defendant Lambert remove venue to protect the record from future tampering.

recused and after she was voted in the office.[18]  Defendant Lambert had done nothing, nor issued any orders to protect the Plaintiffs case file 01-CI-1197 in Pike County Kentucky.  Defendant Lambert, as head of the Administrative Office of the Courts has a duty to protect the records in the Courts of Kentucky and to investigate file tampering by circuit clerks.

68.  The Plaintiff has requested through open records a copy of the due process procedure to file and administrative complaint against the Pike County Circuit Clerk David Deskins for the tampering of records in case file 01-CI-1197.  There is no administrative procedure in the Commonwealth of Kentucky for a citizen to file complaints against a Circuit Clerk for allowing tampering of the records.[19]

### WRONGDOING BY DEFENDANT LEWIS NICHOLLS

69.  Judge Nicholls has knowledge of the wrongdoing of Stevens, Hall, Paxton, Preston, and Wells.  Judge Nicholls knows that the supervised visitation order he issued is unconstitutional and in violation of the KRS  403.320(1).

70.  Judge Nicholls is purposefully and intentionally helping Stevens to win permanent custody of the Plaintiffs children by refusing to show that either a 1) factual finding had been issued, or by 2) issuing a factual finding himself.

71.  Judge Nicholls is purposefully and intentionally failing to place the Plaintiffs motions for hearings.  Judge Nicholls has failed to hear the Plaintiffs motions in case 01-CI-1197 to protect the wrongdoing of KBA Members Stevens, Cumbo and Hall.

72.  In complete violation of the civil rules and after the Plaintiff filed a motion of the subject matter; Judge Nicholls engaged in an ex parte investigation of Judge Thompson filing orders in case 01-CI-1197 without jurisdiction.

---

[18] See Exhibit 14.
[19] See Exhibit 14 and 13.

## WRONGDOING BY JUDGE THOMPSON

73. Judge Thompson was on notice of the illegal EPO by Stevens and Hall in April 2007 and by judicial canon had a duty to prevent Stevens and Hall from abusing the legal process.

74. Judge Thompson failed in judicial canon duties to report Stevens and Hall to the KBA but failed to do so.

75. Judge Thompson recused. Then Judge Thompson continued to file orders in Pike County Case 01-CI-1197 after his recusal.

76. Judge Thompson without jurisdiction, placed a handwritten order in case 01-CI-1197 ridiculing and humiliating the Plaintiff by order her to a "Psycho" exam. Such is violation of the judicial canons.

77. The case file records 01-CI-1197 are easily accessible to Judge Thompson's and his staff and there has been tampering in those records.[20]

## WRONGDOING BY THE JUDICIAL CONDUCT COMMISSION

78. Defendant JCC has the duty to enforce the laws, regulations and the Supreme Court Rules of Kentucky against judicial officers. Defendant JCC refused at the very least to sanction Judge Thompson for signing orders without jurisdiction, which is at the heart of judicial misconduct. Defendant JCC will not act on complaints by individuals such as the Plaintiff, who are not members of the KBA and thus members of the Kentucky Court system lower caste.

## WRONGDOING BY THE KENTUCKY BAR ASSOCIATION

79. Defendant KBA has the duty to enforce the laws, regulations, and the Supreme Court Rules of Kentucky on KBA members. This is the conflict of interest. The KBA refuses to enforce the laws, regulations, and the Supreme Court Rules of Kentucky on its members because its members are a part of the Kentucky Court system higher caste. Moreover, while the conflict

---

[20] See Exhibit 14.

of interest rule is still facially a part of the rules;  the KBA refused to enforce the conflict of interest rule against Hall who abused his elected office by 1) using child support enforcement for political favor and 2) having the Plaintiff falsely arrested so Hall could prosecute her.

### JUDICIAL NOTICE OF THE ABUSES OF LEGAL PROCESS AGAINST THE PLAINTIFF BY STEVENS AND HALL

80.  Stevens and Hall have done the utmost to ruin the credibility of the Plaintiff while the judicial officers turn a blind eye to the abuses of law going on before them by Hall and Stevens.

81.  The Plaintiff requests this Court to take judicial notice of the following.

82.  On May 24 2006; the Plaintiff was convicted of domestic violence by marching in public with a sign.  The EPO was requested by Stevens.[21]

83.  On December 13, 2006:  Judge Preston stated that there was no merit to the EPO and vacated the order.[22]

84.  On June 6, 2006; the Plaintiff asked Attorney General Greg Stumbo to investigate the crimes by Hall.[23]

85.  On June 8, 2006:  Hall and the Plaintiff received a letter stating that the Attorney General had no "jurisdiction or intention" to investigate Hall.

86.  On June 8, 2006; two agencies within the Attorney Generals Office the Kentucky Bureau of Investigation and the Prosecutors Advisory Council both had jurisdiction to investigate the crimes of Hall.[24]

---

[21] See Exhibits 1 and 2.
[22] See Exhibit 9.
[23] See Exhibit 6.
[24] The Plaintiff makes no admission in this statement that the KBI is a legitimate organization.  There is conjecture that the KBI is illegally formed and actually has no constitutional standing in the Commonwealth of Kentucky. The Plaintiff is simply stating that the KBI purpose as alleged on the Attorney General website is to investigate public

87. That on June 12, 2006; Hall typed up a warrant for the Plaintiffs arrest despite his conflict of interest and after being assured by the Attorney Generals office that they would assist Hall in any way.[25]

88. That on June 30, 2006; the Plaintiff was arrested.

89. That Hall did not recuse from prosecuting the Plaintiff until October 2006 and only after she noticed the court of the conflict of interest.

90. That the case was dismissed against the Plaintiff in March 2007.

91. That notwithstanding, Stevens personal friend, Commonwealth Attorney Rick Bartley continued to harass the Plaintiff to benefit Stevens and took the Plaintiff before the Pike County Grand Jury.

92. The Plaintiff has testified before the Pike County Grand Jury of the abuses by Hall and Stevens and the Pike County Grand Jury refuses to indict the Plaintiff. Bartley refused to allow the Plaintiff to present testimony of Stevens' perjury to the Pike County Grand Jury.

93. That after communication with Stevens; social worker Shereena Hamilton made two substantiations of neglect against the Plaintiff in October 2006.

94. That Hamilton violated the Plaintiffs due process rights and did not give the Plaintiff notice by certified mail as required by law.

95. That the Plaintiff found out about the substantiations by an anonymous person on the internet in March 2007.

96. That the Plaintiff requested a due process notice, and then won an administrative hearing and had all neglect charges against the Plaintiff cleared in August 2007.

---

corruption and was in operation on the date which Attorney General Greg Stumbo claimed he had no jurisdiction to investigate his campaign contributor Howard Keith Hall.

[25] KSP Trooper Ryan Hamilton has stated under oath at the preliminary hearing that the warrant was prepared by Hall's office. Further in an open records request; Hall admits that his office prepared the warrant for the Plaintiff's arrest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Amy Mischler, requests injunctions against the Defendants as follows of which they are already supposed to be doing as required by the Kentucky Constitution:

A.  A federal order to Chief Justice Lambert to enforce the Rules, Regulations, and the Kentucky Supreme Courts Rules in all cases involving the Plaintiff Amy Mischler.  This would include an investigation of all the Plaintiffs allegations concerning cases 02-D-202-003, 01-CI-1197, and 06-F-00438 and a report to be filed to this Court for review in six months of the filing of this complaint.  All documents of the investigation shall be maintained for inspection by this Court.

B.  A federal order to Judge Nicholls to produce to this court a copy of a factual finding issued before November 2007 which shows the Plaintiff is a risk of serious endangerment to her children which necessitated supervised visitation.

C.  A federal order to Judge Nicholls to produce to this court a copy of a factual finding issued by him which shows the Plaintiff is a risk of serious endangerment to her children, for which Nicholls used to continue the Plaintiff being under supervised visitation with her children after November 2007.

C.  A federal order to Judge Nicholls that any party who files a fraudulent emergency protective order against a joint custodial parent in order to illegally gain custody comes to the custodial hearing with unclean hands and cannot keep custody due to his committing of fraud. Any individual who commits such a fraud to illegally gain custody; it is inherent under the law that it cannot be in the best interest of the children to remain an individual who purports a fraud upon the court.

D.  A federal order to the Judge Larry Thompson to refrain from filing any more orders without jurisdiction in the Plaintiffs court records.

E.  A federal order to Chief Justice Lambert to move the venue of Pike County Case 01-CI-1197 out of Pike County and away from Judge Thompson to the Plaintiffs County of residence.  Such order shall direct either Nicholls or newly assigned judicial officer to submit an organization plan to address out of date motions which the Plaintiff filed and judicial officers refused to address timely.  Moreover, this organization plan to address the Plaintiffs denial of redress to the Courts of Grievances against Attorney Jonah Stevens in 01-CI-1197 shall be implemented with all due speed.

F.  A federal order to the Kentucky Judicial Conduct Commission to investigate the judicial officers in Pike County Case 01-CI-1197, 06-F-00438, and 02-D-202-003.  Such an investigation will include an interview of the Plaintiff and a report by the Judicial Conduct Commission will be filed in this action within six months of the filing of this action.  All records of the investigation shall be maintained by the Judicial Conduct Committee for inspection by this Court.

G.  A federal order to the Kentucky Bar Association to enforce all of the Supreme Court Rules against members of the Kentucky Bar Association, including the conflict of interest rule. The Kentucky Bar Association will conduct an investigation of the Plaintiffs allegations, and will include an interview with the Plaintiff.  A report will be filed in this action by the Kentucky Bar Association within six months of the filing of this action.  All records of this investigation shall be maintained by the Kentucky Bar Association for inspection by this Court.

H. For an award of reasonable attorney's fees and her costs on her behalf expended as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. Section 1988; and reimbursement of cost including court fees.

I. For such other and further relief to which Plaintiff may show herself justly entitled.

**The Plaintiff will be satisfied with the Courts intervention in this matter without a jury trial. In addition, since the matters requested are a matter of judicial right to redress grievances and the Defendants have both Federal and Commonwealth duties to provide procedural and substantive due process to the Plaintiff for relief; the Plaintiff requests the attached order to be signed ex parte for immediate investigations to be conducted.**

Respectfully Submitted,

Amy Mischler, On her own Behalf

April 30, 2008
320 Inverness Avenue
Louisville KY 40214